ORDERED.

Dated: June 14, 2013



Eileen W. Hollowell, Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 4:12-bk-20519-EWH |
| VAL-MID ASSOCIATES, L.L.C., | ) | |
| | ) | **MEMORANDUM DECISION** |
| Debtor. | ) | |

# I. INTRODUCTION

Debtor seeks confirmation of its liquidating plan of reorganization. For the reasons explained in the balance of this memorandum, confirmation will be denied and the case will be converted to Chapter 7.

# II. FACTUAL AND PROCEDURAL HISTORY

Debtor owns two Chevron-branded gas station/convenience stores ("Midvale Station" and "Irvington Station", collectively "Stations"). In 2004 and 2006, Debtor borrowed money ("Loan") from Canyon Community Bank ("Bank") to acquire the Stations. The Loan is secured by the Stations' real property and by the personal property at the Midvale Station. The Loan is personally guaranteed by Debtor's principals. From the inception of the Loan until July 2012, Debtor paid over a half-million dollars in principal and over a million dollars in interest on the Loan.

Over the past few years, however, the Stations were not generating cash flow at the level required by the Bank's loan documents. In May 2012, the Bank sent Debtor a notice of covenant default. Attempts by Debtor and Bank to negotiate a resolution of that default were unsuccessful. Thereafter, Debtor failed to make its June payment. In July, the Bank declared a monetary default and accelerated its debt. Notwithstanding serving Debtor with notices of default, the Bank did not attempt to enforce its security interest in Debtor's assets.

Also in July, the Bank sued Debtor's principals on their guarantees. After the principals were sued, Debtor offered to return the Stations to the Bank. The Bank refused Debtor's offer.

On September 14, 2012, Debtor filed for Chapter 11. The case was assigned to the Hon. James M. Marlar. Debtor's schedules listed over $600,000 in unsecured debt (excluding the Bank's potential deficiency claim) held by approximately 25 creditors. Two weeks after filing its case, Debtor filed a Chapter 11 plan ("Plan") and disclosure statement ("Disclosure Statement").

The Plan provided the Bank with two alternatives: (a) return of the Stations, including all personal property, with the option of assuming Debtor's executory supply contracts; or (b) permitting Debtor to market the Stations for six months, with the Bank bearing the cost of any operational shortfalls. If the Stations were not sold during the six-month marketing period, they would be transferred to the Bank.

The Plan also provided that Pima County's secured tax claim would be paid upon transfer to any purchaser of the Stations or the Bank. It provided for 100% payment to general unsecured creditors 90 days after Plan confirmation. Any deficiency claim held

by the Bank, which was separately classified, would receive the same treatment. The Plan provided that Debtor's principals would retain their equity interest in Debtor. The Plan was to be funded from cash on hand and an undisclosed contribution amount made by Debtor's principals. The Plan contained no provision for dealing with avoidance actions.

In October, Debtor filed a motion ("Valuation Motion") seeking a determination of the value of the Bank's collateral in order to determine the amount of the Bank's secured claim. The Bank opposed the Valuation Motion arguing that the Plan was unconfirmable and that valuation was, therefore, unnecessary. The Bank also raised numerous objections to the Plan and asked the Court to enter an order requiring Debtor to continue operating the Stations or sell them.

A hearing on the Disclosure Statement was conducted on November 5, 2012. At that hearing, Judge Marlar set a December confirmation hearing at which valuation would not be considered. Judge Marlar also declined to set a date for a separate valuation hearing. On November 6, 2012, Debtor filed a First Amended Disclosure Statement to satisfy concerns raised by Judge Marlar at the November 5 hearing.

An initial hearing on confirmation of the Plan was conducted on December 11, 2012.[1] After supplemental briefing, an Order was entered denying confirmation. The Court found that the Plan preserved Pima County's (the only accepting class) full rights and remedies to collect the taxes via statutory foreclosure of its liens in the event that the Bank or a purchaser failed to pay them. Therefore, Judge Marlar concluded that the Plan did not alter or change Pima County's rights as required for "impairment" under

---

[1] The Ballot Report indicated only two unsecured creditors voted for the Plan. Chevron, which held a claim of over $113,000, controlled the class and voted to reject.

3

11 U.S.C. 1124. As a result, Pima County's Class 2 claims did not constitute an impaired consenting class as required by 11 U.S.C. § 1129(a)(10).

In late January 2013, Judge Marlar retired and the case was assigned to this Court. On February 8, 2013, Debtor filed a First Amended Plan ("Amended Plan"). The Amended Plan made the following changes:

    (a)    Terminated equity interests at confirmation;

    (b)    Paid Pima County's secured tax claim as follows:

        (i)    $7,600 at confirmation from Debtor's cash on hand;

        (ii)    remainder of claim paid (as in the Plan) by purchaser or the Bank upon transfer of the Stations;

    (c)    Paid unsecured creditors pro rata from "available cash" (and paid the Bank's separately classified deficiency claim in the same manner);

    (d)    Quantified principals' contribution to "available cash" at $60,000.

The treatment of the Bank's secured claim remained the same—immediate return of the Stations or return after a six-month marketing period.

On February 20, 2013, an order ("February 20 Order") was entered which:

    (1)    Set an April 1 evidentiary hearing on confirmation and valuation;

    (2)    Gave creditors until March 22 to change ballots cast on the Plan.

On March 21, the Bank paid all of Pima County's secured tax claims. On that same date, Pima County filed a "Notice of Satisfaction and Withdrawal of Pima County's Claims." On March 22, the Bank filed an emergency motion ("Emergency Motion") to appoint a Chapter 11 Trustee or dismiss the case. On March 28, the Bank filed an objection to Pima County's withdrawn claims ("Claim Objection").

4

On March 29, Debtor filed a revised ballot report which showed Pima County voting in favor of the Amended Plan. All other non-insider classes voted to reject. On April 1, the confirmation hearing was commenced and Debtor presented its evidence. The hearing was then continued until May 6.

On May 6, combined hearing was held on confirmation of the Amend Plan, the Emergency Motion, and the Claim Objection. At that hearing, the Court ruled that a valuation hearing need not be held because the Amended Plan provided either for a return of the Bank's collateral or its sale. In either event, value would be set by those actions. At the conclusion of the May 6 hearing, Debtor and Bank presented closing arguments. The matter is now ready for decision

### III. ISSUES

1. Can the Amended Plan be confirmed?

2. Should the case be dismissed?

3. Alternatively, should a Chapter 11 Trustee be appointed or should the case be converted to Chapter 7?

### IV. STATEMENT OF JURISDICTION

Jurisdiction is proper under 28 U.S.C. §§ 1334(a) and 157(a) and (b)(2)(A), (L) and (O).

### V. DISCUSSION

A. Accepting Impaired Class

Whether Pima County's vote in favor of the Plan counts as a vote in favor of the Amended Plan consumed a large part of the arguments at the May 6 hearing. Bank's questionable last-minute payment of Pima County's claims, followed by the Claims

Objection, added more smoke than light to the analysis. However, a review of all the confirmation evidence has made determination of the validity of Pima County's vote unnecessary because the Amended Plan cannot be confirmed for other reasons. Debtor bears the burden of demonstrating that it has met every requirement under §§ 1129(a) and (b). <u>United States ex rel. Farmers Home Admin. v. Arnold & Baker Farms (In re Arnold & Baker Farms)</u>, 177 B.R. 648, 654 (9th Cir. BAP 1994). It has failed to do so.

B.  <u>Good Faith</u>

Section 1129(a)(3) mandates that a court shall confirm a plan "only if…the plan has been proposed in good faith…." 11 U.S.C. § 1129(a)(3). The good-faith inquiry requires a totality-of-the-circumstances analysis. <u>In re Seasons Partners, LLC</u>, 439 B.R. 505, 513 (Bankr. D. Ariz. 2010) ("In order to determine good faith, a court must inquire into the totality of circumstances surrounding the plan, the application of the principles of fundamental fairness in dealing with creditors, and then decide whether the plan will fairly achieve a result consistent with the objectives and purposes of the Code.")

The Bank's pleadings are full of sound and fury about the lack of good faith in Debtor's proposed surrender of the Stations to the Bank despite the Bank's inability to operate them. However, just because the Bank does not want to have the Stations turned over does not mean Debtor's proposal to do so constitutes bad faith. Section 1129(b)(2)(A)(iii) specifically permits Debtor to return property to a secured creditor in satisfaction of its claim. <u>In re Arnold & Baker</u>, 177 B.R. at 660-61. The problem for Debtor is that it has failed to prove that the Amended Plan otherwise satisfies the good faith requirement.

6

The Amended Plan cannot pass the good-faith test because it does not propose a method for creditors to recover the value of potential preferences and fraudulent transfers. The Statement of Financial Affairs indicates that payments to insiders of $98,000 were made during the one-year preference period.[2] That amount exceeds the contribution to available cash by Debtor's insiders by more than $30,000. Yet, the Amended Plan contains no provision about avoidance actions. At the confirmation hearing, Debtor's counsel argued that nothing in the Amended Plan releases such potential claims, but there is also nothing in the Amended Plan which preserves them. As a result, such claims effectively disappear at confirmation because no party has been provided with the authority to pursue them.

Knowingly sacrificing prospectively significant value demonstrates a lack of good faith within the totality-of-circumstance analysis of 1129(a)(3). Another subsection of § 1129 captures why this willful surrender of avoidance actions is so damaging to Debtor's cause. Section 1129(a)(7)(A) requires that each impaired class either accept a reorganization plan—an impossibility in this case—or receive a distribution equal to or greater than the distribution that would have been provided through a Chapter 7 liquidation. 11 U.S.C. § 1129(a)(7)(A). Known as the "best interest test," "[this] concept is a cornerstone of the theoretical underpinnings of [C]hapter 11. It stands as an individual guaranty to each creditor or interest holder that it will receive at least as much in reorganization as it would in liquidation." In re Sierra-Cal, 210 B.R. 168, 172 (Bankr. E.D. Cal. 1997) (quoting 7 COLLIER ON BANKRUPTCY ¶ 1129.03[7] (Lawrence P. King et al. eds., 15th ed. Rev. 1997)) (internal quotation marks omitted). The objectives and purposes of the Code cannot be fairly achieved when creditors are not reasonably

---

[2] Bank in its pleadings asserts the amount is $68,000. The exact amount does not change the analysis.

certain that a proposed plan serves their interests better than liquidation. In this case, the Amended Plan fails to provide a mechanism for pursuing preferences and fraudulent transfers. Instead, it permanently leaves those causes of action beyond creditors' grasp.

Under different circumstances, a debtor might be able to solve this problem by filing an amendment to its plan or "fixing" it through the language in a confirmation order. But Debtor has already had two opportunities to confirm a plan. Furthermore, there has been a marked lack of support for the Amended Plan from the unsecured creditors. The Bank has also adamantly opposed Debtor's efforts to confirm a plan. More than technical compliance with the Code is required when there is so little creditor support. <u>Everett v. Perez (In re Perez)</u>, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994) ("The burden of proposing a plan that satisfies the requirements of the Code always falls on the party proposing it, but it falls particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors."). Furthermore, Debtor has sought to shift all of the risk of the liquidation onto the Bank in the second alternative offered. In so doing, and in failing to provide for the recovery of preferences or fraudulent transfers, Debtor has failed to meet the requirements of § 1129.

C.  <u>Motion to Dismiss or Appoint Chapter 11 Trustee</u>

Because confirmation has been denied, the Bank's Motion to Dismiss or Appoint a Chapter 11 Trustee must be decided.

There are assets in the estate consisting of unencumbered inventory at the Irvington Station, possible preference claims, and perhaps equity in the Bank's collateral. As a result, dismissal would not be in the best interest of creditors. Ongoing

8

operational losses make it unlikely that a Chapter 11 Trustee could operate the Stations, and the expense of a Chapter 11 Trustee would undoubtedly exceed the administrative cost of a Chapter 7 Trustee. Debtor's counsel stated at the confirmation hearing that conversion of the case would be the best result if the Amended Plan was not confirmed.

Accordingly, the Bank's motion to dismiss or to appoint a Chapter 11 trustee will be denied, but pursuant to this Court's powers under 11 U.S.C. § 105, the case will be converted to Chapter 7.

## VI. **CONCLUSION**

The Amended Plan does not satisfy § 1129's confirmation requirements. Dismissal of the case is not in the best interest of creditors. Appointment of a Chapter 11 trustee is not economically feasible. Accordingly, the case is converted to Chapter 7. Two orders consistent with this decision will be entered on this date.[3]

Dated and signed above.

Notice to be sent through the
Bankruptcy Noticing Center ("BNC")
to the following:

John R. Clemency
Lindsi M. Weber
Todd A. Burgess
Gallagher & Kennedy PA
2575 E. Camelback Rd., Suite 1100
Phoenix, AZ 85016
Attorneys for Val-Mid Associates, L.L.C.

Michael McGrath
Isaac D. Rothschild
Mesch, Clark & Rothschild, P.C.
259 N. Meyer Ave.

---

[3] The foregoing constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7054.

1. Tucson, AZ 85701
Attorneys for Canyon Community Bank

2. 

3. Renee Sandler Shamblin
Office of the U.S. Trustee
4. 230 N. First Ave., Suite 204
Phoenix, AZ 85003